Filed 8/25/22  P. v. Bell CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL BELL,<br><br>        Defendant and Appellant. | B310866<br><br>(Los Angeles County<br>Super. Ct. No. BA107262) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Vacated and remanded with directions.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Penal Code section 1172.6 authorizes a court in appropriate circumstances to grant a petition to vacate a murder conviction obtained pursuant to the natural and probable consequences doctrine.[1]  If the court vacates the conviction but there were other charges levied, the court must resentence the petitioner on those charges.  However, if the court vacates the conviction and there were no other charges, i.e., murder was charged generically and the target offense was not charged, the court must then redesignate the conviction as the target offense and resentence the petitioner for that offense.

Here, the trial court vacated Bell's conviction for second degree murder, which had been charged generically, but redesignated the conviction not as the target offense, simple assault, but as assault by means of force likely to cause great bodily injury, which the court found was supported by the evidence, and added enhancements which the court found were also supported beyond a reasonable doubt.  The court then resentenced Bell accordingly.

Bell appeals, contending the court should have redesignated his murder conviction as the target offense—simple assault—not as a newly envisaged felony, and alternatively contends that no substantial evidence supports a conviction for assault by means of force likely to cause great bodily injury.  He also contends the abstract of judgment requires correction.

---

[1] Undesignated statutory references will be to the Penal Code.  Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

We agree that the redesignation was unauthorized, resulting in an unauthorized sentence. Accordingly, we vacate the order and remand the matter with directions.

## BACKGROUND

### A. Conviction

On October 19, 1993, several Black P Stone gang members led by Bell, who had a gun in his waistband, attacked four men, including Kendall Pryor and Kerry Bell, at a gym. (Kerry Bell was no relation to appellant, and will hereafter be referred to as "Kerry" to avoid confusion.) Bell started a fight that turned in to a free-for-all, during which Kerry was struck on the head with a chain and fell to the ground. Pryor was beaten by several gang members, including Bell, and was ultimately shot and killed by Kendall Mosely, one of the assailants.

Bell was charged with murder, and the information alleged that a principal was armed with a firearm and that Bell personally used a firearm. On July 31, 1995, the trial court found insufficient evidence supported the allegation that Bell personally used a firearm, and entered a judgment of acquittal on that allegation.

The jury was instructed on first degree premeditated murder (CALJIC 8.20), second degree murder (CALCRIM 8.30), direct aiding and abetting of the murder (CALJIC 3.00, 3.01), and aiding and abetting an "assault" under the natural probable consequence theory (CALJIC 3.02).

On August 7, 1995, a jury found Bell guilty of second degree murder and found true the allegation that a principal was armed with a firearm. On January 12, 1996, the court sentenced Bell to 15 years-to-life plus one year for the firearm finding.

We affirmed the conviction.  (*People v. Bell* (Apr. 22, 1997, B099896) [nonpub. opn.] (*Bell*).)

## B.     Petition

On January 2, 2019, Bell petitioned the superior court for resentencing pursuant to former section 1170.95.  The court appointed counsel to represent him, later granted his petition to represent himself, and issued an Order to Show Cause.

Relying on trial transcripts and our opinion in *Bell*, the court found after a hearing that the prosecution failed to prove beyond a reasonable doubt that Bell could still be convicted of murder as a direct aider and abettor because the evidence failed to show he harbored malice.  The court noted that Bell was not the shooter, that only five of the dozen gang members who fought with Pryor and his friends inside the gymnasium continued the fight into the hallway where Pryor was shot, and that no evidence suggested Bell was in the hallway or participated in Pryor's beating immediately preceding his death.

The court therefore granted Bell's petition for resentencing and vacated his murder conviction and sentence.

## C.     Resentencing

At the resentencing hearing, the court observed that because murder had been charged generically, with no other charges, the court could select any suitable target offense for resentencing.  The court redesignated the target offense as assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), found a principal had used a weapon within the meaning of section 12022, subdivision (a), and added the uncharged allegation that Bell personally inflicted great bodily injury on Pryor within the meaning of section 12022.7, subdivision (a).

4

In answer to Bell's objection that it was never alleged at trial nor found by the jury that he personally inflicted great bodily injury on Pryor, the resentencing court justified its great bodily injury finding by observing that Bell had been "an aider and abettor . . . to all of it."

The court sentenced Bell to the upper term of four years, plus three years for the infliction of great bodily injury and one year for the weapon enhancement.

Bell was given credit for 9,581 actual days plus 217 days local credit for a total of 9,798 days.

He timely appealed.

## DISCUSSION

Bell contends the court erred in redesignating his murder conviction as assault by means of force likely to produce great bodily injury and by adding allegations that a principal was personally armed with a firearm and Bell personally inflicted great bodily injury on Pryor.  We agree.

## A.    The New Sentence was Improper

### 1.     Section 1172.6

Senate Bill No. 1437 was enacted in 2018 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  It accomplished this by amending section 188, subdivision (a)(3), to require that all principals in a murder, except felony murder under section 189, subdivision (e), must have acted with express or implied malice to be convicted of that crime.  (Stats. 2018, ch. 1015, § 2.)  For a

felony murder conviction under section 189, subdivision (e), Senate Bill No. 1437 required that the defendant be the actual killer, an aider and abettor to the murder who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3.)

A person convicted of murder under a felony murder or natural and probable consequences theory may petition the sentencing court to vacate the conviction and resentence on any remaining counts if the person could not now be convicted of murder under the new section 188 or 189. (§ 1172.6, subd. (a).)

As pertinent here, subdivision (d)(3) of section 1172.6 provides that "[i]f the prosecution fails to sustain its burden of proof [in opposition to a resentencing petition], the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced *on the remaining charges*." (Italics added.)

Subdivision (e) of section 1172.6 provides in pertinent part that if "murder . . . was charged generically, and the target offense was not charged," the "conviction shall be redesignated as the target offense or underlying felony for resentencing purposes."[2]

We interpret a statute de novo. (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

_____

[2] Subdivision (e) of section 1172.6 provides: "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose."

### 2.    "Target Offense"

The issue is what constitutes the "target offense" for purposes of section 1172.6 when murder is charged generically and there are no separate charges.  Subdivision (e) of section 1172.6 neither defines target offense nor specifies the process by which the court should identify that offense.  (*People v. Medina* (2009) 46 Cal.4th 913, 920.)  Where the target offense is not separately charged, "[T]he court must determine the target offense . . . by reference . . . to the underlying felony (target offense) identified in the instructions."  (J. Richard Couzens, Accomplice Liability for Murder (SB 1437) (June 2020), Sec. VI, p. 47.)

### 3.    Analysis

#### a.    redesignation

Here, Bell was charged only with murder; there were no "remaining charges."  But per jury instructions and the prosecutor's closing arguments, the prosecution's theory was that Bell directly aided and abetted the murder of Pryor or aided and abetted an "assault" under the natural and probable consequence theory.  The target offense was therefore simple assault.

Under these circumstances the proper course would have been to vacate Bell's conviction and firearm enhancement and redesignate the conviction as simple assault.

Section 1172.6 contains no provision for redesignating a generically-charged conviction as something other than the target offense, or for appending an enhancement thereto.  Therefore, Bell's new sentence for assault by means of force likely to produce great bodily injury, plus firearm and personal infliction of great bodily injury enhancements, was unlawful.

7

Relying on *People v. Howard* (2020) 50 Cal.App.5th 727 (*Howard*) and its progeny, Respondent argues the court properly identified the target offense as assault by means of force likely to produce great bodily injury. We disagree.

In *Howard*, an elderly woman was shot and killed during a burglary of her home. (*Howard, supra,* 50 Cal.App.5th at p. 729.) The jury convicted the defendant of first degree murder with a felony-murder special circumstance, finding the defendant was engaged in the commission of the crime of "burglary," with no person-present allegation such as would raise second-degree burglary to burglary of the first degree (§ 190.2, subd. (a)(17)(G)). (*Howard,* at p. 732.) The trial court later granted the defendant's former section 1170.95 resentencing petition and identified the underlying felony as first degree residential burglary, stating that "a second degree burglary designation would lack credibility and common sense, and 'would cause an injustice' to the prosecution and the victim." (*Howard,* at p. 734.) Our colleagues in District One held that the evidence at trial established that the basis for Howard's murder liability was the burglary of a residence. Accordingly, the offense underlying his felony-murder liability was first degree burglary. (*Id.* at pp. 737-738.) The court observed that "the plain language of [former] section 1170.95, subdivision (e), contemplates a situation where—as here—the underlying felony was not charged. It follows that where the underlying felony is not charged, there will be no jury instruction or verdict form." (*Id.* at p. 738.) Therefore, the court reasoned, the absence of a first degree burglary instruction and verdict did not preclude the trial court from identifying the underlying offense as first degree burglary because the evidence at trial demonstrated "beyond any dispute" that the building

8

Howard invaded was a residence.  (*Ibid*.)  The court "question[ed] the practicality of requiring a trial court to ignore evidence established at trial when designating the underlying felony pursuant to [former] section 1170.95, subdivision (e)."  (*Ibid*.)

Following *Howard*, the First District held in *People v. Silva* (2021) 72 Cal.App.5th 505 (*Silva*) that identifying the target offenses—which arose out of an uncharged home invasion robbery involving five victims—as five home-invasion robberies was proper, because "factfinding by the resentencing judge . . . is implicit in the redesignation process."  (*Id*. at p. 520.)

Also following *Howard*, the First District held in *People v. Watson* (2021) 64 Cal.App.5th 474 that identifying the target offense—where a hotel guest was killed in his hotel room during a robbery—as both first degree burglary and first degree robbery was proper.  (*Id*. at pp. 485-492.)

Respondent urges that we follow *Howard*, *Watson* and *Silva*, and identify the target offense here as any offense supported by the evidence.  Bell, to the contrary, argues those cases were wrongly decided, and urges that we disagree with them.  We need neither follow nor disagree with the cases because they are distinguishable.

Because the Legislature has not defined "target offense," the courts must perforce engage on some degree of factfinding to identify the offense underlying the original conviction.  In some cases the target offence may be identified by referencing such factors as the location of the crime or presence of additional victims.  For example, a burglary is of the first degree when it occurs in an occupied residence, and of the second degree when it occurs somewhere other than in an occupied residence.  (Compare § 460, subd. (a) [burglary of an inhabited dwelling house is

burglary of the first degree] and subd. (b) [any other burglary is of the second degree].)  It is therefore within the mandate of section 1172.6 to identify the target offense by determining the context of the crime, even if that context can be found in no charging document or jury instruction.  To do so comports with common sense and results in no injustice.

Thus in *Howard*, for example, the First District aptly held that the underlying offense—identified only as "burglary" at trial—was first rather than second-degree burglary because it was "beyond any dispute" that the victim was killed in her own home.  (*Howard, supra*, 50 Cal.App.5th at p. 738.)  Similarly in *Watson*, it was beyond dispute that the killing occurred in the victim's hotel room during a robbery, and in *Silva* that the killing occurred during a home invasion robbery involving five victims.  In each case the court identified the target offense by taking into consideration the undisputable circumstances under which the crime was committed.

Not so here.  Here, the target offense was identified only as an "assault."  To distinguish simple from aggravated assault requires reference not to the location of the incident or number of victims but to the quality of the attack.  (Compare § 241 [assault punishable by a six-month jail term] and § 245, subd. (a)(4) [assault by means of force likely to produce great bodily injury punishable by prison term of two, three or four years].)

Here, for example, to determine that Bell committed assault by means of force likely to produce great bodily injury would require the court to qualify the force used.

In sum, we agree with *Howard*, *Watson* and *Silva* that to identify a target offense where charging documents and jury instructions are silent sometimes requires consideration of the

10

undisputable context of the crime, for example whether a burglary occurred in an inhabited dwelling, or whether there was more than one victim.  But to extend judicial factfinding upon resentencing to disputable issues such as the degree of force used in an assault goes beyond the mandate of section 1172.6 to identify the target offense.

Therefore, Bell's redesignated sentence was unlawful, and must be vacated.

### b.      enhancements

Bell argues the trial court further erred in appending a great bodily injury to his conviction.  We agree because section 1172.6 contains no provision for adding new enhancements.

Respondent urges that we follow *People v. Gonzales* (2021) 65 Cal.App.5th 1167, where our colleagues in Division Four of this district approved attaching a gang allegation to a redesignated simple battery offense.  But the only issue raised in that case was whether adding an enhancement that did not exist when the defendant was originally convicted violated the ex post facto clauses of the United States and California Constitutions (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9).  (*Gonzales*, at p. 1170.)  The court was not called upon to decide, and did not decide, whether section 1172.6 authorizes such an enhancement. *Gonzales* therefore does not stand for the proposition that section 1170.95 authorizes new enhancements.

Because the plain language of section 1172.6 authorizes no new enhancement, we conclude that part of Bell's redesignated sentence was also unlawful, and must be vacated.

We do not reach whether substantial evidence supported the redesignated sentence, nor whether the abstract of judgment must be corrected.

11

**DISPOSITION**

The trial court's order is vacated and the matter remanded. The court is directed to redesignate Bell's conviction as being for simple assault and resentence him accordingly.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

MORI, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.